Faith Hashemi, Esq., SBN # 338912
James L. Arrasmith, Esq., SBN  332498
The Law Offices of James L. Arrasmith
9719 Lincoln Village Dr., 506
Sacramento, CA 95827
Telephone: (916)-704-3009
Email: james@jlegal.org

Attorney for Plaintiffs
WEIJING TANG

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WEIJING TANG,**<br><br>             Plaintiff.<br><br>         v.<br><br>**The regents of the university of California; Dr. Ellen lumpkin, in her official capacity as head graduate advisor of the molecular and cell biology department at the university of California, Berkeley; Dr. Matthew welch, in his official capacity as co-chair of the Molecular and cell biology department at the university of California, Berkeley; Dr. Rebecca Heald, in her official capacity as co-chair of the Molecular and cell biology department at the University of California, Berkeley; and Carina Galicia, in her official capacity as director of Student services of the molecular and cell biology department at the University of California, Berkeley**<br><br>             Defendant. | Case No.:<br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**EMERGENCY RELIEF SOUGHT** |

### INTRODUCTION

1. This is an action for declaratory and injunctive relief arising from Defendants' ongoing pattern of arbitrary, capricious, discriminatory, and retaliatory actions against Plaintiff Weijing Tang, an international Ph.D. student in the Molecular and Cell Biology ("MCB") program at the University of California, Berkeley.

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
Page 1 of 15

2. Ms. Tang was scheduled to be dismissed from her Ph.D. program on May 15, 2025—a development that would result in the immediate loss of her student visa status, compel her departure from the United States, and inflict irreparable harm on her academic career and future professional opportunities.

3. Despite Ms. Tang's diligent efforts to secure a new lab placement following the relocation of her previous advisor and documented technical interference with her communication capabilities, Defendants have erected a series of arbitrary barriers designed to force her out of the program before the May 15, 2025 deadline.

4. These actions appear to be motivated, at least in part, by Defendants' discriminatory practices against Ms. Tang based on her national origin. While the department ultimately paid the Non-Resident Supplemental Tuition (NRST) in certain instances, Defendants have repeatedly used Ms. Tang's NRST obligation as a barrier to her securing lab placement. Specifically, Defendants have misrepresented to potential faculty mentors that they, rather than the department, would be responsible for paying Ms. Tang's NRST fees, thereby characterizing her as an exceptionally "expensive" student due solely to her status as an international student. This pattern of conduct violates federal law prohibiting discrimination based on national origin and has directly impeded Ms. Tang's academic progress and professional development.

5. Additionally, Ms. Tang has filed two complaints with the Office for Civil Rights (OCR) on April 25, 2025, and May 5, 2025. Her impending dismissal during the pendency of these complaints constitutes further retaliation and would effectively undermine the OCR investigation process.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) because it arises under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendant Regents of the University of California is subject to personal jurisdiction in this district.

## PARTIES

9. Plaintiff Weijing Tang is a citizen of the People's Republic of China and a Ph.D. student in the Molecular and Cell Biology program at the University of California, Berkeley. She resides in Berkeley, California.

10. Defendant Regents of the University of California ("Regents") is the governing body of the University of California system, a public university system in the State of California. The Regents is a corporation established under the Constitution of the State of California with the power to sue and be sued.

11. Defendant Dr. Ellen Lumpkin is the Head Graduate Advisor of the Molecular and Cell Biology Department at the University of California, Berkeley. She is sued in her official capacity.

12. Defendant Dr. Matthew Welch is the Co-Chair of the Molecular and Cell Biology Department at the University of California, Berkeley. He is sued in his official capacity.

13. Defendant Dr. Rebecca Heald is the Co-Chair of the Molecular and Cell Biology Department at the University of California, Berkeley. She is sued in her official capacity.

14. Defendant Carina Galicia is the Director of Student Services of the Molecular and Cell Biology Department at the University of California, Berkeley. She is sued in her official capacity.

## FACTUAL ALLEGATIONS

### Background

15. Ms. Tang was admitted to the Molecular and Cell Biology Ph.D. program at UC Berkeley as a Sponsored Direct Admit ("SD") student in February 2022, with Dr. Polina Lishko as her sponsoring faculty member.

16. Ms. Tang's admission letter, dated February 25, 2022, guaranteed her "support for the entire duration of the program (per department policy)" including an annual stipend, tuition, fees, and health insurance.

17. In April 2022, prior to Ms. Tang's matriculation, Dr. Lishko notified Ms. Tang and the MCB department that she was leaving UC Berkeley to join Washington University in St. Louis.

18. The MCB department required Ms. Tang to find another sponsoring faculty member before her matriculation in Fall 2022, giving her only three months to secure another lab placement.

19. In June 2022, Ms. Tang secured provisional placement in Dr. Andrew Dillin's lab..

Harassment in the Dillin Lab

20. Beginning in December 2022, Ms. Tang experienced harassment from a postdoctoral researcher named Hanlin Zhang, who was assigned to supervise her in the Dillin lab.

21. Hanlin frequently made comments to other lab members implying that, due to Ms. Tang's computer science background, she lacked the necessary biological knowledge to contribute meaningfully to the lab's work. These remarks undermined Ms. Tang's qualifications, despite her bachelor's degree in biological sciences and three years of Alzheimer's research experience at Stanford University.

22. Hanlin appeared to discourage other lab members from interacting with Ms. Tang, contributing to her professional isolation within the lab.

23. While still in the Dillin lab, Ms. Tang reported these issues only to the lab manager. After leaving the lab, she formally reported the matter to the Office for the Prevention of Harassment and Discrimination (OPHD), Employee & Labor Relations (ELR), and the office addressing abusive misconduct in April 2024.

24. In June 2023, Ms. Tang left the Dillin lab due to the hostile work environment.

Defendants' Arbitrary Actions Following Ms. Tang's Departure from the Dillin Lab

25. Following her departure, Dr. Dillin withdrew his financial support for Ms. Tang in July 2023.

26. In August 2023, Ms. Tang was offered only a single two-month rotation by the MCB department, rather than the standard three 10-week rotations typically provided to graduate students in her program.

27. This rotation was presented without the required formal paperwork, such as a signed rotation agreement form, which is standard protocol in the program.

28. Ms. Tang was informed that her funding would be terminated following the completion of this short rotation.

29. The position offered to Ms. Tang was as an unpaid "Student Researcher," which is inconsistent with departmental policies regarding financial aid and student support.

30. In contrast, another domestic student, Dylan Aiden, who was in a similar position with respect to lab placement, received full funding and was not subject to the same reduction in support or shortened rotation.

///

///

### Unfair Grading and Academic Probation

31. In August 2023, Head Graduate Advisor Ellen Lumpkin required Ms. Tang to register for research credit under Dr. Lumpkin's name, rather than under the Principal Investigators with whom Ms. Tang was rotating (Dr. Staller and Dr. Lucas), contrary to department policy.

32. Despite fulfilling the program's requirements, Ms. Tang received a B+ grade from Dr. Lumpkin, while Dylan Aiden, in the same situation, received an A or A- grade for the same course. Ms. Tang has evidence of text message exchanges confirming this disparity in treatment.

33. On October 27, 2023, Ms. Tang was placed on academic probation, ostensibly for "inadequate progress in research and training skills," despite maintaining a GPA above 3.7, which exceeds the department's definition of "satisfactory performance" (a GPA above 3.0).

34. The probation letter required Ms. Tang to secure a lab placement within six weeks (by December 15, 2023) or face dismissal from the program.

35. Multiple faculty members who expressed interest in working with Ms. Tang, including Dr. Ian Swinburne, Dr. Gokul Upadhyayula, Dr. Frederic Theunissen, Dr. Iswar Hariharan, and Dr. Sam Lewis, indicated that this timeframe was insufficient to properly evaluate her as a potential student.

36. When professors contacted the Head Graduate Advisor or Graduate Affairs Office to inquire about Ms. Tang, these opportunities consistently closed soon afterward, suggesting that negative information was being provided.

37. During Fall 2023, Ms. Tang was supposed to have a GSI appointment for which she had already received an offer letter dated May 30, 2023. However, this appointment was revoked by the department on August 16, 2023, citing her lack of a permanent lab placement.

38. In early December 2023, during a meeting with Carina Galicia (GSAO), Ms. Tang inquired about the availability of funding within the department. Ms. Galicia responded, "We have enough funding, we just don't want to provide it to you," revealing the discriminatory intent behind the department's actions.

### Withdrawal and Re-enrollment Conditions

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
Page 5 of 15

39. Ms. Tang's mental well-being and financial stability deteriorated significantly under the weight of insurmountable barriers and looming dismissal threats. With no viable alternatives, she reluctantly took a medical withdrawal from the program for the Spring 2024 semester to continue her lab placement search while focusing on her health recovery.

40. On December 7, 2023, the MCB department issued a letter outlining conditions for Ms. Tang's re-enrollment, including: (1) securing a lab placement with a faculty member who could commit to funding her, and (2) remaining on probationary status until earning a grade of B or better in MCB 292 and an advanced topics course.

<u>Continued Obstacles Despite Securing Lab Placemen</u>

41. Throughout Spring and Summer 2024, Ms. Tang continued her efforts to secure a lab placement, reaching out to numerous faculty members and attending interviews.

42. In May-June 2024, Ms. Tang began interviewing with Dr. Lea Grinberg, who expressed interest in having her join her lab. By June 2024, Dr. Grinberg confirmed that she had funding available and could take Ms. Tang into her lab.

43. In July and August 2024, when Dr. Grinberg contacted the MCB department, she was told that she would be required to pay Ms. Tang's NRST fees and that Ms. Tang would be placed on probation. This was communicated to Dr. Grinberg despite the fact that Ms. Tang was still appealing her probation status to the Graduate Division, and a decision had not yet been rendered.

44. Ms. Tang had secured a GSI position with the Bioengineering Department for Fall 2024, which would have provided financial support. However, she lost this position because MCB delayed processing her re-enrollment paperwork until September 26, 2024—just one day before her visa would have expired.

45. On August 28, 2024, both Dr. Grinberg and Dr. James Olzmann (who agreed to serve as Ms. Tang's MCB mentor) signed the paperwork for her to join their labs. When Ms. Tang submitted this to the GSAO, they imposed additional requirements, including requiring Dr. Grinberg to sign a Sponsored Direct Admission policy and provide "funding for joint labs," requirements that were not imposed on other students.

46. After a petition letter sent out by the student union and signed by more than half of the graduate students in MCB (221 students) was delivered to the department expressing concern about Ms. Tang's treatment, she was finally readmitted to the program in

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
Page 6 of 15

September 2024. However, she was maintained on probationary status and subjected to various restrictions.

47. Ms. Tang officially joined Dr. Grinberg's lab on October 28, 2024, after the lengthy paperwork process. By this time, she had already lost the GSI position with Bioengineering that she had secured for Fall 2024.

<u>Policy Changes and Dr. Grinberg's Relocation</u>

48. On November 26, 2024, Dr. Grinberg formally informed MCB of her lab's upcoming relocation to the Mayo Clinic in Florida.

49. During a meeting with Dr. Grinberg, MCB Chair Rebecca Heald, the GSAO, and the HGA, Ms. Tang inquired about the possibility of remaining enrolled at Berkeley while continuing her research remotely under Dr. Grinberg's mentorship. Ms. Tang was informed that MCB had recently changed its policy to allow students only one lab switch, meaning she would have to transfer out of Berkeley and leave the program.

50. This policy change directly contradicted MCB's January 2024 guidelines, which explicitly state that PIs are expected to support directly admitted students during lab transitions.

51. Despite Ms. Tang's repeated requests for meetings to discuss her situation in December 2024 and January 2025, she received no response from the department until late January, when Department Chair Matthew Welch and Manager Mark Jackson met with her and her union representative and granted her permission to transfer labs.

<u>Health Insurance, Improper Appointment Processing, and Termination</u>

52. In February 2025, Ms. Tang discovered that her health insurance had not been paid for the first two months of the semester, leaving her without coverage while she was sick for a month. She reported this to Dr. Grinberg, who referred her to Carina Galicia.

53. In March 2025, Ms. Tang began receiving repeated tuition billing notices. Upon investigation, she discovered that her GSR appointment had been improperly processed. Instead of being employed by UC Berkeley with a co-advisor in MCB listing her in their lab (as is standard practice for students working at UCSF), she had been directly hired by UCSF without proper work authorization.

54. This processing error constituted a serious procedural error in her academic appointment. When the Student Union filed a grievance about this issue, instead of helping to resolve the situation, the university terminated Ms. Tang's GSR appointment on March 21, 2025.

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
Page 7 of 15

55. On March 14, 2025, just one day after the Union contacted Ms. Tang's previous lab about the required fee remission, Ms. Tang received a probation letter from HGA Ellen Lumpkin threatening dismissal if she did not secure a lab placement by May 15, 2025. This letter altered the probation conditions outlined in the original December 7, 2023 letter.

<u>Current Lab Placement Efforts and Email Issues</u>

56. Since March 21, 2025, Ms. Tang has been actively seeking a new lab placement. She has met with numerous professors who have expressed interest in having her join their labs, including:

   a. Prof. Reza Abbasi-Asl, who indicated that a four-week rotation in his lab would be required for consideration for transfer to the CPH or other programs he affiliated with.
   b. Prof. Doris Bachtrog, who requested a rotation before making any decision. While she did not specify the duration, she mentioned that two weeks would be insufficient for proper evaluation.
   c. Prof. Charles Chiu, who shared details about his current projects and invited Ms. Tang to join lab meetings. He also requested references, which Ms. Tang promptly submitted.
   d. Prof. Michael Oldham, who asked whether MCB would permit Ms. Tang to hold three semesters of GSI positions while working in his lab, as this could impact his decision.
   e. Prof. Daniel Mordes, who expressed interest in discussing research papers with Ms. Tang.
   f. Prof. Kristofer Bouchard, who noted that a three-month rotation would be required.
   g. Professors Franklin Huang, Walter Gonzalez, Wendy Yue, and Jennifer Rosenbluth, Bill Beeley all of whom have scheduled interviews with Ms. Tang.

57. Since April 17, 2025, Ms. Tang has been experiencing significant issues with her email accounts, where both incoming and outgoing messages are not being properly delivered or received. This is severely hindering her ability to communicate effectively with potential lab placements.

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
Page 8 of 15

58. Ms. Tang promptly reported this issue to UC Berkeley's IT Client Services and the IT Help Desk, who confirmed on April 30, 2025, that there was a problem with her email delivery. They verified that emails she sent were not being received by recipients, and emails sent to her were not appearing in her inbox. The IT departments indicated this may be an administrative issue on their end, and there is currently no solution available on her side.

### OCR Complaints and Further Retaliation

59. On April 25, 2025, and May 5, 2025, Ms. Tang filed formal complaints with the Office for Civil Rights (OCR) in the Department of Education regarding discrimination and retaliation she has experienced at UC Berkeley.

60. On May 5, 2025, at 6:00 AM, Ms. Tang formally notified the Division of Equity and Inclusion, Title IX Office, Student Affairs Office, MCB department, and the Graduate Division at UC Berkeley of her complaint to the Office for Civil Rights (OCR) and requested temporary protective measures. Later that day, at 11:00 AM, she received a decision from the Computational Precision Health program stating that she would need to reapply in the next application cycle, despite her application having been under review for several weeks.

61. Ms. Tang has repeatedly requested an extension of the May 15, 2025 deadline to accommodate the email issues and the professors' requests for more time to evaluate her properly. These requests have been denied.

### FIRST CLAIM FOR RELIEF
### Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.
*(Against All Defendants)*

62. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

63. Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, or national origin in programs or activities receiving federal financial assistance.

64. The University of California, Berkeley, receives federal financial assistance and is therefore subject to Title VI.

65. Defendants have discriminated against Ms. Tang on the basis of her national origin (Chinese) by:
    a. Applying academic policies against her compared to similarly situated domestic students;

    b. Using her international student status and associated NRST costs as a basis for denying her opportunities afforded to domestic students;

    c. Establishing unreasonable timelines and conditions that disproportionately impact international students;

    d. Making disparaging comments about her language skills;

    e. Actively discouraging faculty from accepting her into their labs;

    f. Terminating her funding while maintaining funding for similarly situated domestic students;

    g. Assigning her a lower grade than a similarly situated domestic student for the same course under identical circumstances; and

    h. Imposing additional requirements and barriers for her lab placement that were not imposed on domestic students.

66. As a direct and proximate result of Defendants' discriminatory actions, Ms. Tang has suffered and continues to suffer substantial injury, including emotional distress, loss of educational opportunities, loss of financial support, potential loss of her student visa status.

## SECOND CLAIM FOR RELIEF

### Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. - Retaliation

(Against All Defendants)

67. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

68. Title IX prohibits retaliation against individuals who complain about sex discrimination or other Title IX violations.

69. Ms. Tang engaged in protected activity when she reported harassment to various university offices and when she filed complaints with OCR alleging discrimination and retaliation.

70. After engaging in these protected activities, Ms. Tang suffered adverse actions, including:

    a. The threat of dismissal from her academic program;

    b. The imposition of unreasonable conditions for remaining in the program;

    c. The loss of funding and employment opportunities; and

    d. The rejection from the Computational Precision Health program immediately after she informed the university of her OCR complaint.

71. There is a causal connection between Ms. Tang's protected activities and these adverse actions, as evidenced by the timing of the adverse actions and the pattern of escalating barriers placed in her path.

72. As a direct and proximate result of Defendants' retaliatory actions, Ms. Tang has suffered and continues to suffer substantial injury, including emotional distress, loss of educational opportunities, and potential loss of her student visa status.

### THIRD CLAIM FOR RELIEF

### Violation of Due Process Under the Fourteenth Amendment

*(Against All Defendants)*

73. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

74. The Fourteenth Amendment to the United States Constitution prohibits state actors from depriving individuals of life, liberty, or property without due process of law.

75. Ms. Tang has a protected property interest in her continued enrollment in the MCB Ph.D. program, as established by her admission letter and the university's policies and procedures.

76. Ms. Tang also has a liberty interest in pursuing her chosen profession, which requires completion of her Ph.D.

77. Defendants have violated Ms. Tang's due process rights by:

    a. Placing her on academic probation without adequate justification or evidence;
    b. Failing to follow established university procedures regarding lab rotations, funding, and academic progress;
    c. Establishing arbitrary and unreasonable deadlines for securing lab placement;
    d. Inconsistently applying academic policies in a manner that disadvantages her;
    e. Retroactively changing policies regarding lab transfers, definition of 'satisfactory performance' and applying them to her situation; and
    f. Failing to provide a fair and impartial process for appealing adverse decisions.

78. As a direct and proximate result of Defendants' actions, Ms. Tang has suffered and continues to suffer substantial injury, including emotional distress, loss of educational opportunities, and potential loss of her student visa status.

///
///
///

## FOURTH CLAIM FOR RELIEF

### Breach of Contract

*(Against Defendant Regents)*

79. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

80. A contract existed between Ms. Tang and the University of California, Berkeley, as evidenced by her admission letter dated February 25, 2022, and the university's policies and procedures.

81. This contract guaranteed Ms. Tang "support for the entire duration of the program (per department policy)" including an annual stipend, tuition, fees, and health insurance.

82. The university breached this contract by:

    a. Terminating Ms. Tang's funding after September 2023;

    b. Failing to provide the rotations and research opportunities promised;

    c. Imposing conditions and requirements not specified in the original agreement;

    d. Failing to honor the MCB Sponsored Direct Admission Policy, which as revised in January 2024 requires continuing financial support until a new research supervisor is found; and

    e. Refusing to allow Ms. Tang to accept GSI positions that would provide financial support.

83. As a direct and proximate result of Defendant's breach, Ms. Tang has suffered damages including loss of funding, additional expenses, and potential inability to complete her Ph.D. program.

## FIFTH CLAIM FOR RELIEF

### Violation of California's Unruh Civil Rights Act, Cal. Civ. Code § 51

*(Against All Defendants)*

84. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

85. The Unruh Civil Rights Act prohibits discrimination on the basis of national origin in all business establishments in California, including public universities.

86. Defendants have discriminated against Ms. Tang on the basis of her national origin by treating her differently from similarly situated domestic students with respect to academic requirements, funding opportunities, and lab placement procedures.

87. As a direct and proximate result of Defendants' actions, Ms. Tang has suffered damages, including emotional distress and loss of educational opportunities.

### SIXTH CLAIM FOR RELIEF

### Declaratory Relief

(Against All Defendants)

88. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

89. An actual controversy has arisen between Ms. Tang and Defendants regarding her rights under federal and state law, as well as university policies and procedures.

90. Ms. Tang seeks a declaration that Defendants' actions violate Title VI of the Civil Rights Act, Title IX of the Education Amendments of 1972, the Fourteenth Amendment, California's Unruh Civil Rights Act, and constitute a breach of contract.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Issue a temporary restraining order and preliminary injunction:

1. Prohibiting Defendants from dismissing Ms. Tang from the MCB Ph.D. program on May 15, 2025, or at any time based on the current probationary status;

2. Directing Defendants to extend Ms. Tang's deadline to secure a lab placement and receive support from MCB for at least 90 additional days;

3. Prohibiting Defendants from interfering with or impeding Ms. Tang's communications with faculty members regarding potential lab placements;

4. Requiring Defendants to maintain Ms. Tang's student status and visa eligibility during this extended period;

5. Allowing Ms. Tang to accept any Graduate Student Instructor position she has been offered or may be offered during this period; and

6. Requiring Defendants to preserve all evidence related to Ms. Tang's email delivery logs, auto-routing configurations, employment processing, and lab placement efforts;

B. Issue a permanent injunction prohibiting Defendants from discriminating against Ms. Tang on the basis of her national origin and from retaliating against her for engaging in protected activities;

C. Declare that Defendants' actions violate Title VI of the Civil Rights Act, Title IX of the Education Amendments of 1972, the Fourteenth Amendment, California's Unruh Civil Rights Act, and constitute a breach of contract;

D. Award compensatory damages in an amount to be determined at trial;

E. Award reasonable attorneys' fees and costs pursuant to applicable law; and

1  F. Grant such other and further relief as the Court deems just and proper.

Dated: May 27, 2025

Respectfully submitted,

THE LAW OFFICES OF JAMES L. ARRASMITH

By: _____*Faith Hashemi*_____

FAITH HASHEMI, (SBN # 338912)

Attorney for Plaintiff

WEIJING TANG

## **VERIFICATION**

I, WEIJING TANG, declare as follows:

I am the Plaintiff in this action. I have read the foregoing Verified Complaint and know its contents. The facts alleged in the Verified Complaint are within my personal knowledge and I know these facts to be true. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 27, 2025, at Berkeley, California.

*Weijing Tang*
WEIJING TANG