UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEIJING TANG,<br><br>            Plaintiff,<br><br>      v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>            Defendants. | Case No.  25-cv-04568-RFL<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 42 |

**I.     INTRODUCTION**

On May 28, 2025, Plaintiff Weijing Tang, through Counsel, filed a Complaint and a motion for a temporary restraining order and preliminary injunction ("First TRO Motion"). (Dkt. Nos. 1–2.)  The Complaint alleges an "ongoing pattern of arbitrary, capricious, discriminatory, and retaliatory actions against [] Tang, an international Ph.D. student [from China,] in the Molecular and Cell Biology program" ("MCB Program") at the University of California, Berkeley ("UC Berkeley").  (Dkt. No. 1 at 1.)[1]  The Complaint asserts the following causes of action: (1) national origin discrimination in violation of Title VI of the Civil Rights Act of 1964; (2) retaliation for reporting sex discrimination in violation of Title IX of the Civil Rights Act of 1972; (3) violation of the due process clause of the Fourteenth Amendment; (4) breach of contract; (5) national origin discrimination in violation of California's Unruh Civil Rights Act.  Tang names The Regents of the University of California and various employees of

---

[1] All citations to pages numbers refer to ECF pagination.

1

UC Berkeley as Defendants.[2]  Tang voluntarily withdrew her First TRO Motion, but on September 30, 2025, Tang filed a renewed motion for a temporary restraining order and preliminary injunction.  (Dkt. No. 42 ("Motion").)  For the reasons explained below, the Motion is **DENIED**.  On the existing record, Tang has not raised a serious question going to the merits of any claim that would entitle her to the emergency relief that she seeks.  This order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties.

## II.    PROCEDURAL BACKGROUND

In her First TRO Motion, Tang sought to bar Defendants from dismissing her from the MCB Program, and require them to provide extensions to allow her to secure a lab placement without further discrimination or interference.  (*Id.*)  Regents opposed the First TRO Motion, and Tang, after associating new counsel, withdrew the motion.  (Dkt. No. 21, 29, 33.)  On September 3, 2025, the Court conditionally granted Tang's new counsel's motion to withdraw, due to a conflict, and extended certain case deadlines to allow Plaintiff to find a third attorney to serve as her counsel.  (Dkt. No. 41.)

On September 30, 2025, Tang filed a declaration indicating that she would be proceeding *pro se* (Dkt. No. 43 at 1), and filed a renewed motion for a TRO and preliminary injunction (Dkt. No. 42, ("Motion")).  Tang's Motion and supporting exhibits indicate that Tang's dismissal from the MCB Program became final on September 29, 2025, and that she is at risk of losing her visa status.  Her Motion seeks to enjoin her dismissal, and also seeks other relief.  On October 1, 2025, the Court held a status conference, at which Tang and counsel for Regents appeared.  (Dkt. No. 45.)  Regents agreed to voluntarily delay enforcing or giving effect to Tang's dismissal, which has not yet been processed by the Registrar's office, so that the parties could brief the Motion.  (Dkt. No. 46.)

---

[2] Only Regents has been served to date.

**III.   LEGAL STANDARD**

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also applies an alternative "sliding scale" approach to the *Winter* factors wherein "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (quotation omitted).

**IV.   ANALYSIS**

Tang's motion is denied. As explained in further detail below, Tang has not raised a serious question going to the merits of any claim that would entitle her to emergency injunctive relief to address an irreparable harm.

   **A.   Irreparable Harm**

The central relief that Tang seeks is for the Court to require UC Berkeley to stay her dismissal and reinstate Tang in the MCB Program. (Dkt. No. 42 at 36.) Tang has shown that she is likely to suffer irreparable harm absent this relief. Most importantly, the record reflects that Tang is an international student on an F-visa. If relief is not granted, it is likely that she will either (1) lose her visa status and become deportable, or (2) be required to immediately transfer out of the Ph.D. program that she has dedicated several years to and at which she wishes to

remain to complete her degree.  (Dkt. No. 2-1 ¶ 60; Dkt. No. 52-1 p. 2 ¶ 3.)  Courts have found that similar facts give rise to a likelihood of irreparable injury.  *See*, *e.g.*, *W. B. v. Noem,* No. 25-cv-03407-EMC, 2025 WL 1180296, at *3–4 (N.D. Cal. Apr. 23, 2025) (finding that termination of F-1 status and inability to continue in education program was irreparable harm because "Plaintiff has studied for almost 10 years to obtain her PhD and gain her current employment and career trajectory" and faces "a risk of immediate detention and removal from the United States").

However, Tang's Motion also seeks clarification and modification of policies, access to educational records, and retroactive pay and reimbursement.  (Dkt. No. 42 at 2–3, 36–37.)  Tang has not shown that she requires this relief to avoid irreparable injury.  Therefore, to the extent the claims in the Complaint—or other claims that Tang intends to assert in the future (*see id.* at 11–32)—are directed at such relief, Tang has not established a likelihood of irreparable injury supporting her entitlement to such a broad preliminary injunction.  Therefore, the Court does not consider the likelihood of success on the merits of these additional claims.

## B.     Serious Question Going to the Merits

Tang has not shown a serious question going to the merits of her claims seeking to stay her dismissal and reinstate her in the MCB Program.  As a threshold matter, although Tang's case has been pending since May and she has been represented by counsel for nearly all of the pendency of her case, she has only served the Complaint on Regents, and has not sought to extend the service deadline.  *See* Fed. R. Civ. P. 4(m).  Therefore, the Court analyzes Tang's likelihood of success on the merits of these claims against Regents only.

***Title VI national origin discrimination claim***.  Tang has not raised a serious question going to the merits of her national origin claim under Title VI because the doctrines of judicial exhaustion and *Younger* abstention would bar her from the relief she seeks.

The California "Supreme Court has held that the Regents [] must have considerable discretion to determine how best to carry out [its] educational mission." *Berman v. Regents of the Univ. of Cal.*, 178 Cal. Rptr. 3d 62, 68 (Cal. App. 2014).  "[T]his includes a quasi-judicial administrative authority to resolve [ ] disputes by applying university policies to particular

4

cases." *Id.* Furthermore, California's "doctrine of judicial exhaustion precludes an action that challenges the result of a quasi-judicial proceeding unless the plaintiff first challenges the decision through a petition for writ of mandamus" in California state court. *Gupta v. Stanford Univ.*, 21 Cal. Rptr. 3d 192, 194 (Cal. App. 2004) (citing Cal. Code Civ. Proc. § 1094.5(a)).

Under federal common law, federal courts follow California state courts, and "accord preclusive effect to state administrative proceedings that meet the fairness requirements of *United States v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966)." *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1154 (9th Cir. 2018); *see also Miller v. Cnty. of Santa Cruz*, 39 F.3d 1030, 1033 (9th Cir. 1994), *as amended* (Dec. 27, 1994). The fairness requirements are: (1) that "a state agency acts in a judicial capacity to resolve disputed issues of fact and law properly before it," and (2) "the parties have had an adequate opportunity to litigate those issues." *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999) (describing the *Utah Construction* standard). "[F]ailure to exhaust judicial remedies forfeits only the issues that [plaintiff] had the opportunity to litigate." *Avila v. Los Angeles Police Dep't*, No. 11-cv-01326, 2012 WL 12886838, at *7 (C.D. Cal. Feb. 27, 2012). In assessing fairness and adequacy of opportunity to litigate issues, the federal court must examine "both the underlying administrative proceeding and the available judicial review procedure." *Doe*, 891 F.3d at 1154; *see also Olson*, 188 F.3d at 1086–87. Where plaintiff had a "right to raise" issues in the administrative proceeding but asserts "irregularity in the proceedings" before the administrative body, the fairness requirements may satisfied by availability of judicial review to address those deficiencies. *Olson*, 188 F.3d at 1086–87.

The record shows that the requirements for the application of the judicial exhaustion doctrine are met with respect to Tang's request to stay her dismissal based on the alleged Title VI violations. Ellen Lumpkin, who is the Head Graduate Advisor for MCB, describes in a declaration that she notified Tang, in writing on, October 27, 2023 that Tang would be placed on probation because "she had not timely met the requirements and expectations of her program," including receiving "a minimum B grade in two advanced topics courses" and obtaining a

"dissertation laboratory placement."  (Dkt. No. 20-1 ¶ 7, p. 30–31.)[3]  The graduate division subsequently placed Tang on probation, and then permitted Tang to temporarily, voluntarily withdraw, on the condition that reenrollment was subject to the terms of her probation.  (*Id.* ¶ 8, p. 34.)

Tang appealed the probation determination to MCB, and through the Graduate Appeal Procedure.  (*Id.* ¶ 12.)  That procedure covers, among other things, "complaints about dismissal from graduate standing, placement on probationary status, and . . . other administrative or academic decisions that terminate or otherwise impede progress toward academic or professional degree goals." (Dkt. No. 52-1 at 5.)  In the first appeal, Tang described "mitigating circumstances" that had affected her academic progress.  (Dkt. No. 20-1, pp. 40–42.)  She alleged that she "experienced unfair treatment" in the Dillian lab, was graded unfairly, and that she was not assisted in "navigat[ing her] grievances.  (*Id.*)  The appeal was denied.  (*Id.* p. 45.)

Tang filed a second appeal challenging the terms of her re-enrollment that had been imposed in conjunction with her probation.  In this second appeal, Tang stated that she suffered "harassment" and was "belittled" in the Dillin lab, and that Lumpkin "made disparaging comments" and gave her an "arbitrarily lower grade than another student in an identical position."  (*Id.* pp. 48–56.)  Tang listed extensive procedural violations she believed had occurred in her case, and asserted that the decision to place her on probation was the result of "discrimination or harassment on the basis of national origin."  (*Id.* pp. 49–54.)

The February 19, 2025 "Report to the Administrative Committee of the Graduate Council ['Committee'] Regarding the Appeal of Weijing Tang" reflects that Tang' second appeal related to her claims of "procedural error," "discrimination based on national origin," and "mitigating circumstances."  (*Id.* p. 71; *see also* Dkt. No. 52-1 at 6 (providing that formal appeals under the Graduate Appeal Procedure may be brought based on procedural error, discrimination based on

---

[3] This order relies on documents from Tang's educational records that are provisionally sealed. However, because Tang has voluntarily disclosed information regarding these same records in her own publicly accessible filings, this order is unredacted.

various protected characteristics including national origin, or mitigating circumstances).) The report indicates that, as to the national original discrimination claim, the issue was referred to the Office of Prevention of Harassment and Discrimination ("OPHD") as "outside the charge of the committee," and states that OPHD "did not find sufficient grounds to proceed with an investigation." (Dkt. No. 20-1 p. 71, 75; *see also* Dkt. No. 52-1 p. 8 (committee should consult with campus compliance officer regarding national origin discrimination complaints).)

The record reflects that the Committee held a hearing, that Tang was permitted to submit evidence, and appeared before the Committee to make her arguments. (Dkt. No. 20-1 p. 73.) After reviewing the record and hearing from Tang, the Committee recommended that Tang's appeal not be upheld. (*Id.* p. 76.) Tang alleges that there were procedural irregularities in the Committee's process: that statements she made were subsequently misrepresented, investigations were intentionally delayed, hearings were scheduled arbitrarily in an effort to exclude Tang's counsel, and that the only Asian member of the Committee was excluded from the decision-making process. (Dkt. No. 53 at 22–25.) On March 14, 2025, Lumpkin informed Tang, in writing, that "it appeared she had been unable to meet the conditions of reenrollment" and advised her that her dismissal would be recommended. (*Id.* ¶ 11, p. 37.)

Tang appealed the recommendation to dismiss under the Graduate Appeal Procedure. (Dkt. No. 43 at 87–114.) Although attempts were made to schedule a further hearing concerning this appeal, it appears that no further hearing was held. Tang contends that her request to postpone the hearing to permit completion of medical appointments was unfairly denied. (Dkt. No. 42 at 9.) The appeal was ultimately denied on September 29, 2025, citing the February 19, 2025 Committee report. (Dkt. No. 43 at 153.)

In light of the evidence in the record, it appears that Tang's Title VI claim is precluded under the judicial exhaustion doctrine, at least to the extent that Tang seeks to enjoin her dismissal based on this claim. As explained above, Tang's academic dismissal occurred after a lengthy, formalized, quasi-judicial administrative proceeding that allowed for at least one hearing and the introduction of evidence. During the appeal process, Tang alleged national

origin discrimination, and she raised the same factual allegations that support her Title VI claim in this case. Tang's dismissal appears to be the result of an adjudicatory, quasi-judicial decision-making process that permitted her to raise the claim at issue. To the extent that Tang challenges deficiencies in that process, she had an opportunity to raise those deficiencies in the administrative process and may re-raise them on judicial review by seeking a writ in the California courts under Cal. Code Civ. Proc. § 1094.5(a). As a result, Tang's request to stay or reverse her dismissal based on her Title VI claim is subject to the judicial exhaustion requirement. *See Doe*, 891 F.3d at 1155; *Lemons v. Am. Ass'n of Neurological Surgeons, Inc.*, No. 24-cv-01118, 2025 WL 2244009, at *3 (E.D. Cal. Aug. 6, 2025).

       Tang's claim for emergency relief also appears to be barred under the *Younger* abstention doctrine. The *Younger* doctrine requires that a federal court abstain from hearing collateral attacks on administrative proceedings when: "(1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (quotation omitted). Regarding the first requirement, while the record indicates that Tang's dismissal is "final," courts have found that the availability of judicial review in state court renders an administrative proceeding "ongoing" for purposes of *Younger* abstention, even if judicial review has not been sought. *See, e.g.*, *Mir v. Kirchmeyer*, No. 12-cv-2340, 2014 WL 2436285, *11 (S.D. Cal. May 30, 2014) (collecting cases and noting that this is the "majority approach"). The second and third requirements are met as well. Regents has a strong interest in determining how to carry out its educational mission—as discussed in the preceding paragraphs—and Tang may pursue her claim in California state court and present constitutional challenges. *See Kenneally v. Lungren*, 967 F.2d 329, 332–3 (9th Cir. 1992) (finding that the § 1094.5 procedure provided the plaintiff a "meaningful opportunity" to raise constitutional claims). The final requirement is also met. Tang's requested relief is to enjoin the proceeding that resulted in her dismissal, and remains subject to further judicial

review.

***Title IX claim for retaliation for reporting sexual harassment***.  Tang has not raised a serious question going to the merits of her Title IX claim.  In the Title IX context, a plaintiff must show that she was retaliated against *because* she complained of *sex* discrimination.  *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005).  However, nothing in the record raises a serious question as to whether Tang experienced discrimination or harassment on the basis of sex.  In a declaration, Tang states that one of her supervisors at the "Dillin lab" "made comments to other lab members implying that, due to [Tang's] computer science background, [she] lacked the necessary biological knowledge to contribute meaningfully to the lab's work." (Dkt. No. 2-1 ¶¶ 12–14.)  Tang states that she reported these comments, but was ignored.  (*Id.* ¶¶ 15–16.)  But Tang does not state that she understood the comments to relate in any way to her sex, nor does she describe any other conduct that could amount to sexual harassment or sex discrimination.  Therefore, Tang has not raised a serious question going to her Title IX claim.

***Due process clause, breach of contract, Unruh Civil Rights Act claims***.  Tang has not raised a serious question going to the merits of her due process clause claim, breach of contract claim, or Unruh Civil Rights Act claim because it does not appear that she can overcome the Eleventh Amendment sovereign immunity bar as to Regents.  The Eleventh Amendment bars suits in federal court for damages, declaratory, or injunctive relief against California.  *Papasan v. Allain*, 478 U.S. 265, 276 (1986).  "'[T]he Board of Regents [is] considered to be [an] instrumentalit[y] of the state' and therefore enjoy the same immunity as the state of California." *BV Eng'g v. Univ. of California, Los Angeles*, 858 F.2d 1394, 1395 (9th Cir. 1988) (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir.1982)).  Tang has not identified any basis to find that Regents has waived its sovereign immunity as to these claims.  Therefore, she has not raised a serious question going to the merits of these claims.

## V.  CONCLUSION

For the reasons explained above, Tang's Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 7, 2025

RITA F. LIN
United States District Judge