UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WEIJING TANG,<br><br>           Plaintiff,<br><br>      v.<br><br>THE REGENTS OF THE UNIVERSITY<br>OF CALIFORNIA, et al.,<br><br>           Defendants. | Case No.  25-cv-04568-RFL<br><br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART MOTION TO<br>DISMISS AND SETTING CASE<br>MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 23, 24 |

Plaintiff Weijing Tang filed this action against the Regents of the University of California and four individual Defendants, who have not been served, related to their alleged efforts to dismiss Tang from her Ph.D. program at the University of California, Berkeley's Molecular and Cell Biology Department ("MCB").  (Dkt. No. 1.)  The Complaint asserts claims under Title VI of the Civil Rights Act of 1964 (Count I), Title IX of the Education Amendments of 1972 (Count II), for violation of Due Process under the Fourteenth Amendment (Count III), for breach of contract (Count IV), and for violation of California's Unruh Civil Rights Act (Count V).[1] Regents moves to dismiss the Complaint.  (Dkt. No. 23.)  For the reasons stated below, the Motion is **DENIED IN PART** as to Count I and **GRANTED IN PART** as to Counts II–V.  This order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties.

---

[1] The Complaint also contains an enumerated count for "declaratory relief," which is a remedy not an independent cause of action.  Therefore, the Order does not address Count VI.

1

***Due Process Clause, Breach of Contract, and Unruh Civil Rights Act Claims (Counts III to V)***.  Regents asserts that it is entitled to sovereign immunity as to these claims under the Eleventh Amendment as an instrumentality of the State of California.  Tang does not respond to this argument in her opposition or sur-reply to the Motion.  (Dkt. Nos. 34, 74.)  The claims are dismissed because they are barred, for the reasons explained in *Tang v. Regents of Univ. of California*, No. 25-cv-04568-RFL, 2025 WL 2841681, at *5 (N.D. Cal. Oct. 7, 2025) ("*Tang I*").

***Title IX Retaliation Claim (Count II)***.  Regents moves to dismiss Tang's Title IX claim for failure to state a claim, arguing that Tang has not pled "*gender*-based discrimination or retaliation." (Dkt. No. 23 at 20 (emphasis added).)[2]  On sur-reply, Tang responds that she has pled causation based on the "temporal proximity" between her alleged protected activity and an adverse action.  (Dkt. No. 74 at 4.)  This argument does not address the threshold deficiency that Tang has not pled any underlying *gender*-based discrimination giving rise to the alleged protected activity and subsequent alleged retaliation.  Therefore, the claim is dismissed for the reason explained in *Tang I*.  2025 WL 2841681, at *5.

***Title VI Discrimination Claim (Count I)***.  Regents argues that Tang has failed to allege "discriminatory treatment or animus on the basis of Plaintiff's national origin." (Dkt. No. 23 at 20.)  As alternate bases for dismissal, Regents also argues that Tang's Title VI claim is subject to the judicial exhaustion doctrine,[3] and Tang's failure to file a writ petition in California state court requires the Court to abstain from hearing the claim.  (*Id.* at 17–18.)  Finally, Regents argues that the *Younger* abstention doctrine bars consideration of Tang's claim.  (*Id.*)

Title VI prohibits discrimination due to "race, color, or national origin" within a "program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  Private parties seeking judicial enforcement of Title VI's nondiscrimination protections must prove intentional

---

[2] All citations to page numbers refer to ECF pagination.

[3] Defendants' motion to dismiss also references administrative exhaustion, but exhaustion of Title VI administrative remedies is not required before filing a private action.  *See Kling v. Los Angeles County*, 633 F.2d 876, 879 (9th Cir. 1980) (explaining that Title VI and Title IX share the same enforcement procedures and administrative exhaustion is not required under Title IX).

discrimination. *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1242 (9th Cir. 2021) (*citing Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001). To plead a discrimination claim under Title VI, a plaintiff may allege: "(1) that she is a member of a protected class; (2) that she met the school's legitimate education expectations; (3) that the school engaged in an adverse education action against her; and (4) that she incurred worse treatment than those of similarly situated students not in her protected class." *Xie v. Oakland Unified Sch. Dist.*, No. 12-cv-02950-CRB, 2012 WL 5869707, at *6 (N.D. Cal. Nov. 19, 2012) (citing *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 921 (7th Cir. 2007)). A plaintiff may also allege intentional discrimination directly. *See Rashdan v. Geissberger*, 764 F.3d 1179, 1183–84 (9th Cir. 2014). Direct allegations, if true, would prove discrimination without any inference. *Id.*

Tang alleges she was discriminated against because she is a Chinese citizen. She alleges that after she withdrew from a lab placement due to harassment,[4] the MCB only assigned her to "a single two-month rotation" instead of "the standard three 10-week rotations," with limited funding, while a similarly positioned domestic student "received full funding" and a full set of rotations. (Dkt. No. 1 ¶¶ 26–30.) The ongoing lack of access to the rotation system and lack of funding allegedly caused Tang to repeatedly lose out on opportunities to join laboratories and ultimately resulted in her being placed on probation. (*Id.* ¶¶ 34–37, 56.) Tang alleges that when she advocated for more funding, she was told "[w]e have enough funding, we just don't want to provide it to you." (*Id.* ¶ 38.) She similarly alleges that she was awarded a lower grade than a similarly situated domestic student in one of her courses. (*Id.* ¶¶ 31–32.) Finally, Tang alleges that "Defendants" have made "disparaging comments about her language skills" (*id.* ¶ 65(d)), although she does not describe the comments, who made them, and in what context.[5]

Regents argue that there is a non-discriminatory explanation for the alleged disparate

---

[4] No factual allegations in the Complaint suggest that the alleged harassment was based on Tang's national origin.

[5] The Complaint contains other factual allegations regarding Tang's treatment while at UC Berkeley, but the remaining allegations do not support discrimination directly, nor do they provide indirect support through comparators. *See Rashdan*, 764 F.3d at 1183–84.

treatment, which hinges on Tang's status as a "Sponsor Directed Admission."  Regents asks the Court to take judicial notice of a one-page MCB policy, dated 1998, indicating that "SD-admittees are not eligible for departmental financial support," do not participate in department-wide laboratory rotations in their first year, and are responsible for finding new placement if "circumstances make it untenable for a SD-admittee to remain in the laboratory of the SD-admittor."  (Dkt. No. 24 at 4.)[6]  But even if the MCB's written policy is to not provide funding assistance to SD-admittees and to not assist them in finding laboratory placements, Tang has alleged that the MCB's practice diverges from its policy.  She alleges that another domestic student "who was in a similar position with respect to lab placement" received full funding and rotation privileges.  (Dkt. No. 1 ¶ 30.)  Tang also alleges that her admission letter guaranteed her "support for the entire duration of the program."  (*Id.* ¶ 16.)  Drawing all reasonable inferences in Tang's favor, Tang has alleged that a domestic SD-admittee was permitted to participate in laboratory rotation and received funding, while Tang—who was initially guaranteed funding as well—was later told that the MCB did not want to fund her.  Similarly, Tang and the domestic student both allegedly fulfilled the requirements of a research course, but received different grades.  (*Id.* ¶ 32.)  While a close call, Tang has adequately alleged a Title VI claim based on these facts.

On a motion for a preliminary injunction, the Court previously found that Tang's Title VI claim was likely subject to the judicial exhaustion requirement and *Younger* abstention.  *Tang I*, 2025 WL 2841681, at *3–4.  However, that finding was based on consideration of the factual record showing that Regents had likely acted "in a judicial capacity to resolve disputed issues of fact and law properly before it," and that Tang had an "adequate opportunity to litigate" the relevant issues.  *Id.* at *3 (quoting *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999); *see also id.* at *5 (explaining that the *Younger* abstention doctrine applies where there are ongoing

---

[6] Regents' unopposed request for judicial notice of two published UC Berkeley policies is granted.  *See Parallel Synthesis Techs., Inc. v. DeRisi*, No. 13-cv-05968-PSG, 2014 WL 4748611, at *3 (N.D. Cal. Sept. 23, 2014) (taking judicial notice of University of California webpages for the purpose of deciding a motion to dismiss).

judicial proceedings).  This factual record is not before the Court on Regents motion to dismiss.  In the Complaint, there are no factual allegations indicating that Regents acted in a judicial capacity with respect to Tang's complaints of discrimination, or what those quasi-judicial proceedings entailed.  While Regents introduces UC Berkeley's graduate division policies regarding dismissals and appeals (Dkt. No. 24 at 20–25), this does not establish what process Tang was subject to.  Therefore, at this stage of the proceedings Tang's claims will not be dismissed based on the doctrines of judicial exhaustion or *Younger* abstention.

*Conclusion*.  For the reasons explained above, Regents' Request for Judicial Notice (Dkt. No. 24) is **GRANTED**.  The Motion to Dismiss (Dkt. No. 23) is **DENIED IN PART** as to Count I and **GRANTED IN PART** as to Counts II–V.  Dismissal of Counts II–V is without leave to amend.  Tang has already had the benefit of the Court's prior ruling on her motion for a temporary restraining order, which identified each of the deficiencies that form the basis for this dismissal.  However, none of the amendments Tang proposes in her sur-reply (Dkt. No. 74 at 5–6) would cure the identified deficiencies.  Therefore, the Court finds that further amendment would be futile.

A case management conference is set for **March 25, 2026 at 10:00 a.m. via Zoom**.  Case management statements are due by **March 18, 2026**.  In light of the Court's findings on Tang's preliminary injunction motion, it appears likely that, on a developed record, Tang's Title VI claim will be found to be barred by the judicial exhaustion requirement and/or subject to *Younger* abstention.  Therefore, the parties' case management statements shall propose a schedule for early summary judgment solely on the issue of whether these doctrines are applicable to Tang's Title VI claim.  The parties shall also propose what discovery, if any, they would need prior to briefing a limited summary judgment motion.

**IT IS SO ORDERED.**

Dated: February 20, 2026

RITA F. LIN
United States District Judge

5